IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAMERON C. MCCARY, ET AL., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> B. CUNNINGHAM, ET AL., ) <br> ) <br> Defendants. ) | Civil Action No. 1:21-cv-00667-TLA |

### MEMORANDUM OPINION

The McCary family alleges a group of New Castle County Police Division officers raided their home.  D.I. 57 ¶ 14.  They claim that, during the raid, the officers violated the Fourth Amendment and committed a range of tort offenses.  *Id.*

These allegations are not new.  The McCarys filed a *pro se* complaint, D.I. 3, and, after obtaining counsel, filed a first amended complaint in September 2021 raising the same claims.  D.I. 26.  I dismissed the tort claims in the amended complaint because the McCarys failed to present sufficient factual allegations to overcome the immunity Delaware's County and Municipal Tort Claims Act (Tort Claims Act), 10 *Del. C.* § 4011, grants to County employees.  D.I. 50.  The McCarys sought leave to amend, which I granted.  *Id.*

They filed in August 2022 a second amended complaint bringing identical tort claims to the ones I dismissed.  Their amended pleading alleges one new injury suffered by one of the named plaintiffs, Venus McCary.  D.I. 57 ¶¶ 51, 54.  Defendants argue this

1

single additional allegation is not enough and move to dismiss the tort claims set out in Counts IV and V.[1]  For the following reasons, I dismiss Matthew, Cameron, and S.M.'s tort claims with prejudice, but will allow Venus's claims to proceed against Officers B. Cunningham and M. Simonetti only.[2]

## I. BACKGROUND[3]

Officers Cunningham and Simonetti, along with the John Doe officers, raided the McCary family home on May 9, 2019, on suspicion of a drug offense.  *Id.* ¶¶ 12–14, 22–23.  They ordered a resident of the home, Venus, to "tell them where the alleged drugs were or they would shoot her son" and accused her of selling drugs herself.  *Id.* ¶¶ 22–23.  The officers found no drugs or evidence of criminal activity at the residence, but in the course of their search they ransacked the home and destroyed property.  *Id.* ¶¶ 29–30.  They also detained the McCarys, denied them access to food and water, and held them at gunpoint for five hours.  *Id.* ¶¶ 17, 20, 24.  In detaining Venus, they handcuffed her, threw her to the ground, and dragged her outside.  *Id.* ¶¶ 18, 27.  She alleges that this caused her to have a stroke for which she was hospitalized.  *Id.* ¶¶ 51, 54.  She suffers

---

[1] Defendants also move to dismiss Count III for failing to allege properly a *Monell* claim. D.I. 60 at 3.  The McCarys have agreed to drop that Count, D.I. 63 at 3, so I dismiss it with prejudice.

[2] I use first names to refer to the McCarys to avoid the confusion that using their last names would cause.  As for Officers B. Cunningham and M. Simonetti, the McCarys do not list their first names in their complaint and the defendants have not volunteered their names, either.

[3] This section recites the factual allegations from the second amended complaint that, to decide the motion to dismiss, I must accept as true unless fanciful or conclusory.  *See Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010).

permanent nerve damage on the left side of her body as a result. *Id.* ¶¶ 51, 54. The officers also handcuffed S.M., zip tied Matthew, and threw both of them to the ground. *Id.* ¶¶ 16, 27, 34.

The McCarys sued Cunningham and Simonetti, as well as John Doe officers, for their alleged constitutional violations (Counts I and II) and tortious conduct (Counts IV and V). *Id.* at 6, 8–9. The officers now move to dismiss Counts IV and V, arguing they merely rehash the same claims of assault, battery, and intentional infliction of emotional distress I previously found to be barred by the Tort Claims Act when I dismissed them from the first amended complaint. *See* D.I. 50.

## II.   DISCUSSION[4]

This motion requires me to decide whether the new factual allegations presented in the second amended complaint resolve the defects I identified in my previous opinion in this case. *See* D.I. 50. For Matthew, Cameron, and S.M.'s claims, this inquiry is straightforward. That is because after I dismissed their claims in the first amended complaint for being deficient in two different ways, they chose not to add to or modify their allegations in the second amended complaint. Thus, I dismiss their Count IV and V claims for the reasons I already articulated in my previous opinion.[5]  *See* D.I. 50 at 7–12.

---

[4] The McCarys' second amended complaint alleges violations under 42 U.S.C. § 1983, so this Court has jurisdiction over those claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the state tort claims under 28 U.S.C. § 1367(a).

[5] In the first amended complaint, the assault and battery, along with intentional infliction of emotional distress, claims were Count IV and Count VI, respectively. *See* D.I. 26, D.I. 50 at 1 n.1.

But the second amended complaint does include one new allegation concerning Venus only: "[she] was transported via ambulance after the incident and was hospitalized. She suffered from a stroke and has permanent nerve injury on her left side as a result of the defendant[s'] action. Venus McCary continues to receive medical treatment as a result of the incident." D.I. 57 ¶¶ 51, 54. In my previous opinion, I found defendants immune from Venus's intentional infliction of emotional distress claim because she did not plead bodily injury. *See* D.I. 50 at 10–11. I also dismissed her assault and battery claim after finding her allegation of injury to be too conclusory. But the new allegation in the amended pleading appears to resolve both of these defects by alleging bodily injury in a more specific fashion than the conclusory claims of general, unspecified "physical injuries" raised in the previous complaint.

Despite Venus's allegation that the officers' conduct caused her to have a stroke and nerve damage, the officers contend she did not properly allege bodily injury and thus cannot overcome their immunity. True, Delaware law grants tort immunity to government employees. *See* 10 *Del. C.* § 4011(a). But there is a narrow exception: "an employee may be personally liable for acts or omissions causing property damage, bodily injury, or death . . . , but only for those acts which were not within the scope of employment or which were performed with wanton negligence or wilful and malicious intent." *Id.* § 4011(c). Both parties agree the officers were acting within the scope of their employment, D.I. 60 at 13, D.I. 57 ¶ 7, so their immunity turns on whether Venus suffered bodily injury, property damage, or death resulting from their wanton or wilful and malicious conduct.

The officers contend Venus insufficiently pled bodily injury because the complaint "does not allege what or who caused [Venus's stroke and nerve damage] other than a conclusory allegation that states [they occurred] 'as a result of defendants' action.'" D.I. 60 at 12 (quoting D.I. 57 ¶¶ 51, 54).  I address both pieces of the officers' contention—that Venus fails to allege 1) what or 2) who caused her injury—separately, before deciding whether she adequately pled they acted culpably.

As for what caused the injury, the operative complaint specifies both the officers' conduct and the injuries Venus suffered.  At this stage, Venus must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  She alleges the officers handcuffed her, violently dragged her by her arms, threw her to the ground, and that she suffered from a stroke and permanent nerve damage because of the officers' conduct.  D.I. 57 ¶¶ 18, 27, 51, 54.  Requiring more specificity about the causal relation between the officers' actions and her injuries would be to require her to plead medical conclusions about how emotional distress or violence can cause a stroke and nerve damage.  This is not required at the pleading stage; thus Venus has sufficiently alleged what caused her injuries.

The officers also contend the new allegations do not identify who caused Venus's injuries.  D.I. 60 at 12.  As I previously explained, "the [first amended] complaint does not differentiate between Cunningham's and Simonetti's actions … because they are accused of acting jointly." D.I. 50 at 8.  The same goes for the second amended

5

complaint.  Thus, Venus adequately alleged that Officers Cunningham and Simonetti injured her.

The same is not true for the John Doe officers, however.  Applying the analysis from my decision on the first amended complaint, whenever the second amended complaint refers to John Doe officers, it does so by explicitly referring to them as "unknown police officers" or "other John Doe officers."  *Cf.* D.I. 50 at 8.  The new allegation in this complaint alleges that a "defendant," referred to in the singular, "arrested, handcuffed, and violently dragged [Venus] by her arms outside."  D.I. 57 ¶ 18.  By referring to the person who handcuffed and dragged Venus as "defendant" in the singular, the complaint departs from how it otherwise refers to the John Doe defendants.  *Cf.* D.I. 50 at 8 ("[W]hen the [first amended] complaint intends to include the John Doe defendants, it explicitly refers to them as the 'unknown police officers' and 'other John Doe officers'" (quoting D.I. 26 ¶¶ 36–37)).  Adding more clarity, the McCarys here accuse only "individual defendants" of throwing them to the ground.  D.I. 57 ¶ 27.  As Venus accuses only Officers Cunningham and Simonetti of tortious actions, I dismiss the John Doe officers from Counts IV and V.

Having concluded that Venus adequately pled that Officers Cunningham and Simonetti injured her, I now determine whether she alleged they behaved with the requisite level of culpability to overcome their immunity.  To do so, I ask whether the new pleading alleges "wanton negligence" or "wilful and malicious intent" as required by the Tort Claims Act.  10 *Del. C.* § 4011(c).  Delaware defines "wanton conduct" as "such conduct as exhibits a conscious indifference to consequences in circumstances where

probability of harm to another within the circumference of the conduct is reasonably apparent, although harm to such other is not intended." *Wagner v. Shanks*, 194 A.2d 701, 706 (Del. 1963) (quoting *Law v. Gallegher*, 197 A. 479, 482 (Del. 1938)).  Venus alleges that, despite her not posing a threat to the officers, they violently dragged her outside by her arms, handcuffed, and threw her to the ground.  D.I. ¶¶ 18, 27.  Accepting that as true, and taking all reasonable inferences in her favor, she sufficiently pled the two officers behaved in a manner that defeats their Tort Claims Act immunity.  Therefore, I will not dismiss her Count IV and V claims.

*   *   *

In sum, I dismiss S.M., Matthew, and Cameron's claims on Count IV and V.  I deny the motion to dismiss Venus's Count IV and V claims against Officers Cunningham and Simonetti but grant the motion to dismiss Venus's Count IV and V claims against the John Doe officers.  I grant the motion to dismiss Count III in its entirety.  All dismissals granted are with prejudice.

/s/ Thomas L. Ambro<br>Circuit Judge, sitting by designation

Dated: August 24, 2023