IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CAMERON C. MCCARY, VENUS
MCCARY, MATTHEW MCCARY,
SAMANTHA MCCARY,

    Plaintiffs,

v.

OFFICER B. CUNNINGHAM, OFFICER
M. SIMONETTI, JOHN DOE POLICE
OFFICERS, and NEW CASTLE COUNTY

    Defendants.

Civil Action No. 21-667-RGA

## MEMORANDUM OPINION

Ronald G. Poliquin, THE POLIQUIN FIRM, LLC, Dover, DE

    Attorney for Plaintiffs.

Michael McTaggart, Helene Episcopo, Maria Knoll, NEW CASTLE COUNTY
GOVERNMENT CENTER, New Castle, DE

    Attorneys for Defendants.

November 24, 2025

**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendants' motion for summary judgment. (D.I. 130) The motion has been fully briefed. (D.I. 131, 136, 137). I heard lengthy oral argument on November 14, 2025.

For the reasons set below, Defendants' motion is GRANTED in part and DENIED in part.

### I. BACKGROUND

Plaintiffs are a family—a mother (Venus McCary) and her three children (Cameron, Matthew, and Samantha McCary). The present action results from a police search of Plaintiffs' home conducted on May 9, 2019. (D.I. 57 at ¶ 12). Over the course of this search, Plaintiffs allege that Defendants detained Plaintiffs for over five hours, threatened to shoot Plaintiffs, or otherwise engaged in various displays of excessive force. (*Id.* at ¶¶ 15-30). Plaintiffs asserted claims against County Police Officers Cunningham and Simonetti, various John Doe Police Officers, and New Castle County. (*See generally id.*). Plaintiffs asserted claims for (1) Excessive Force, False Arrest, False Imprisonment, and Malicious Prosecution claims under § 1983 (Count I), (2) Deprivation of Federally Protected 4th Amendment Rights (Count II), (3) Failure to Train, Supervise, and Discipline Officers (Count III), (4) Assault and Battery (Count IV), and (5) Intentional Infliction of Emotional Distress (Count V).

On August 24, 2023, this Court granted in part Defendants' Motion to Dismiss, including: (1) dismissing Count III in its entirety, (2) dismissing Counts IV and V as to claims brought by Samantha, Cameron, and Matthew McCary, and (3) Counts IV and V as to claims brought by Venus McCary against the John Doe officers. (D.I. 66). The remaining claims, on which Defendants now move for summary judgment, are: (1) Excessive Force, False Arrest, False Imprisonment, and Malicious Prosecution claims under § 1983, (2) Deprivation of

Federally Protected 4th Amendment claims, (3) Plaintiff Venus McCary's Assault and Battery claim, and (4) Plaintiff Venus McCary's Intentional Infliction of Emotional Distress claim. Plaintiffs have informally dismissed their John Doe claims (D.I. 136 at 1 n. 1), so the remaining claims are asserted only against Officers Cunningham and Simonetti.

## II.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence. . . of a genuine dispute. . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's

evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460-61.

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

### III.  DISCUSSION

In the summary judgment briefing, Plaintiffs generally rely upon deposition testimony of themselves, and Defendants generally rely upon body-worn camera (BWC) footage. The BWC footage comes from five different cameras. Four of them capture approximately the first five minutes of the entry into the house. The fifth one captures approximately the first twenty minutes, most of which consists of Plaintiffs sitting in their living room while handcuffed. At oral argument, Plaintiffs made clear that they do not challenge the authenticity of the BWC footage, which included audio. Plaintiffs agreed that the BWC footage accurately depicted the entry into the house and the treatment of Plaintiffs in the first few minutes. According to police records, the search began at 6:25 a.m. and ended at 7:07 a.m. It is thus undisputed that Defendants were in the house and conducting the search for at least those 42 minutes. There is, however, a dispute about when Defendants left the house, with Plaintiffs stating that it was much

later than 7:07 a.m. There is no dispute that Cameron[1] was booked at County Police Headquarters at 7:16 a.m. and that the family placed a call for Venus to be transported to the hospital at around 9:15 a.m.

### A. Excessive Force, False Arrest, False Imprisonment, and Malicious Prosecution claims under § 1983

For the reasons laid out below, I will grant summary judgment as to the False Arrest and Malicious Prosecution claims. I will deny summary judgment as to the False Imprisonment[2] claims of Venus, Matthew, and Samantha McCary. I will grant summary judgment as to the False Imprisonment claim of Cameron McCary. I will grant summary judgment as to the Excessive Force claims of Cameron, Matthew, and Samantha McCary. I will deny summary judgment as to the Excessive Force claims of Venus McCary.

#### 1. False Arrest, False Imprisonment, and Malicious Prosecution

Defendants argue against the False Imprisonment claim by relying on *Muehler v. Mena*, 544 U.S. 93, 100 (2005), where the Court upheld the reasonableness of a two-to-three hour detention in handcuffs during a search for weapons when it was known that a wanted gang member resided on the premises. Defendants argue that Plaintiffs were handcuffed for less than an hour, which should be considered reasonable under these circumstances. (D.I. 137 at 5). The documentary evidence shows that this search began at 6:25 a.m. and ended at 7:07 a.m. (D.I. 133 at A-260).[3] There is no dispute that Cameron was booked at the County Police offices at 7:16

---

[1] Since Plaintiffs all have the same last name, I will sometimes refer to them only by their first names.
[2] "False Imprisonment" is a term used by Plaintiffs' Second Amended Complaint. In the context of this case, it refers to detention for an unreasonably long time and/or in an unreasonable manner.
[3] The start of the search may be a different time than when the police first entered the house, which appears to be at about 6:15 a.m. (D.I. 133 at A-270, A-273, A-278, A-282, A-286).

5

a.m. (D.I. 133 at A-261). Matthew testified that Plaintiffs called for an ambulance "about 20 minutes" after the police left the residence.[4] (*Id.* at A-30). The record shows that the ambulance was called at around 9:15 a.m., which suggests that the police would have left the residence at approximately 8:55 a.m. (*Id.* at A-262). For purposes of summary judgment, I accept (as I must) Plaintiffs' sworn statements that the search and concomitant detention of Plaintiffs (other than Cameron) lasted significantly longer than what police records show. *Muehler* thus does not dispose of the false imprisonment issue; I cannot say, as a matter of law, that Plaintiffs' claimed continuing detention for another approximately hour and a half after Cameron's transportation to jail is reasonable as a matter of law. I therefore decline to grant summary judgment in favor of Defendants on Matthew's, Venus's, and Samantha's § 1983 False Imprisonment claims.

The record shows that Cameron McCary was the only plaintiff who was arrested (D.I. 133 at A-261) and prosecuted (*id.* at A-290). In order to state a claim for False Arrest or Malicious Prosecution, Plaintiffs "must plausibly allege that [Defendants] lacked probable cause to arrest them. . . . Similarly, to state a claim for malicious prosecution under § 1983, [Plaintiffs] must plausibly allege that [Defendants] initiated the proceeding against them without probable cause." *Soto-Santana v. Wengen*, 2025 WL 1201872, at *2 (3d Cir. Apr. 25, 2025). Defendants obtained a valid arrest warrant for Cameron's arrest; this arrest warrant found that there was probable cause to arrest Cameron for Possession of a Firearm by a Convicted Felon in violation of 11 *Del C.* § 1448. (D.I. 133 at A-296, A-300). Therefore, Cameron has no valid § 1983 claim for false arrest. Moreover, because Defendants had probable cause to arrest Cameron, "a reasonable jury could not find for him on his malicious prosecution claim." *Maybin v. Slobodian*,

---

[4] At deposition, Samantha could not be pinned down as to how long she was detained, although she testified that it felt like hours.

739 F. App'x 161, 165 (3d Cir. 2018). Finally, "an arrest based on probable cause cannot become the source of a § 1983 claim for false imprisonment." *White v. Brown*, 2008 WL 5381452 at *2 (D. Del. Dec. 19, 2008) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)) (cleaned up). I will therefore grant summary judgment in favor of Defendants on Cameron's False Arrest, False Imprisonment, and Malicious Prosecution claims.

### 2. Excessive Force Claims

In ruling on the various excessive force claims, I will first analyze the claims unique to the factual circumstances of each Plaintiff before tackling the common claims (i.e., the alleged making of verbal threats).[5]

#### a. Samantha McCary

The crux of the excessive force claim against Samantha[6] appears to be that Defendants drew guns on her while she was coming out of the shower, handcuffed her while she was naked, ignored her pleas for clothing, and handcuffed and detained her in the living room for over five hours. (D.I. 57 at ¶¶ 15-17).

The officers' BWC footage clearly contradicts many of the factual allegations in Plaintiffs' Second Amended Complaint ("SAC"). The BWC footage shows that Samantha's first interaction with the police was when she voluntarily walked down the stairs fully-clothed. (D.I. 133 at A-292 [Video 2 at 3:35-3:40], A-293 [Video 3 at 3:30-3:40]). This footage also shows the officers lowering their weapons as Samantha comes into view. (*Id.*). Further footage shows an officer handcuffing Samantha, asking her if the cuffs are "too tight." (*Id.* at A-294 [Video 4 at 2:20-2:40]).

---

[5] Cameron McCary does not allege any excessive force claims unique to him.
[6] Samantha was a minor at the time of the search. She was originally named as "S.M." She is now an adult, and she no longer needs to be identified by initials.

The only grounds on which Samantha's § 1983 excessive force claim might be valid would be for prolonged and painful handcuffing, since the BWC footage clearly contradicts the other allegations made by Samantha in the SAC.

The various cases cited by Plaintiffs in support of the excessive force handcuffing claim against Samantha do not avail them. The principal case Plaintiffs cite, *Kopec v. Tate,* is easily distinguishable: there, the record showed that Plaintiff "began to faint from the pain caused by the handcuffs and [] fell to the ground . . . . [H]e asked [Defendant] to loosen or remove the handcuffs while [] groaning due to excruciating pain. [Defendant] heard [Plaintiff] but took no steps to assist him . . . . [Plaintiff] claims to have permanent nerve damage in his right wrist as a result of the handcuffing, for which a hand surgeon treated him for over one year." *Kopec v. Tate*, 361 F.3d 772, 774 (3d Cir. 2004). In contrast, the video evidence here shows Samantha sitting quietly and peacefully while handcuffed in the family living room for at least ten minutes (D.I. 133 at A-291 [Video 1 at 7:30-19:02]). Moreover, there is no indication in the record that Samantha ever sought any medical attention related to the handcuffing, much less treatment from a hand surgeon. (*Id.* at A-63).

In fact, one of the other cases cited by Plaintiffs strongly counsels in favor of granting summary judgment on the handcuffing claim. In *Arditi v. Subers*, a court granted summary judgment in favor of the defendants on the plaintiff's excessive force handcuffing claim. *Arditi v. Subers*, 216 F. Supp. 3d 544, 553-54 (E.D. Pa. Oct 25, 2016). The plaintiff in that case stated that "the handcuffs felt like knives digging in his wrists" and submitted medical records indicating that he had gone to the emergency room on the date of the incident, where he presented with "pain, swelling, and red marks on his wrist." *Id.* The court found this insufficient "evidence of excessive force with respect to the handcuffing," given that Plaintiff had "not produced any

8

evidence of long-lasting or permanent injuries resulting from the handcuffing, and his visits to. . . the doctor in the immediate aftermath show[ed] only that he had some swelling that resolved within a few days at most and did not require treatment." *Id.* In this case, there is no evidence in the record that Samantha sought medical treatment for the handcuffing on the day it occurred or at any time thereafter. I will grant summary judgment in favor of Defendants on all excessive force claims brought against them by Samantha.

### b. Matthew McCary

The SAC reads: "Plaintiff Matthew McCary was dragged out of bed by the individual defendants, slammed against the floor, and zip tied causing physical injuries to him." (D.I. 57 at ¶ 34). I have reviewed the relevant BWC footage. (D.I. 133 at A-295 [Video 5 at 3:16-3:33]). It shows Matthew getting out of bed voluntarily and slowly walking up the basement stairs to the officers without incident. At deposition, Matthew himself testified that he was not dragged out of bed and that he walked voluntarily toward the officers who then handcuffed him. (*Id.* at A-33). There is nothing in the record that supports Matthew's excessive force claims.[7] Thus, I will grant summary judgment in favor of Defendants on all excessive force claims brought against them by Matthew.

### c. Venus McCary

The crux of Venus's distinct excessive force claim is that "Defendant handcuffed Plaintiff Venus McCary, arrested, handcuffed (sic), and violently dragged McCary by her arms outside." (D.I. 57 at ¶ 18).[8] Venus's sworn testimony was clear that what she was describing

---

[7] My recollection of the oral argument is that Plaintiffs conceded that the BWC footage foreclosed Matthew's excessive force claims.
[8] The SAC alleges various other actions, though it is not clear whether Plaintiffs intend these to form the basis of Venus's excessive force claims. For instance, Defendants allegedly refused to allow Venus to see her minor daughter, and detained Venus for over five hours outside her home.

occurred at the beginning of the search. Thus, it should have been on the BWC footage. Defendants argue that that the BWC footage should put an end to any such allegations. (D.I. 131 at 4-5; D.I. 137 at 3-4). I have reviewed the BWC footage showing the beginning of the search, and it shows Venus going outside the house and waiting by the car for a period of time. There is no indication in this footage that Venus was violently dragged outside or that she was subject to any other instances of excessive force. (D.I. 133 at A-291 [Video 1 at 2:30-4:10]).

That said, on a motion for summary judgment, I am to view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. The factual record shows that this search lasted at least a little over forty minutes. (D.I. 133 at A-260). The most comprehensive BWC footage in the record contains a little less than twenty minutes of this encounter – less than 50% of the total search time.[9] (*Id.* at A-291 [Video 1]). Furthermore, for approximately five minutes of this recording, Venus was taken out of her living room and thus disappeared from the view of the BWC. (*Id.* at A-291 [Video 1 at 13:55-18:45]). Venus testified that Officer Simonetti threw her down the steps, dragged her, and threw her into the car. (*Id.* at A-104). Upon viewing the video at deposition, Venus steadfastly maintained that these events occurred "[o]n this day, but not in this video." (*Id.* at A-157). A reasonable juror could credit Venus's testimony and find that she was dragged or thrown at some later point that was unrecorded by the BWCs. That is notwithstanding the fact that she described it under oath as being at the beginning of the police entry into the house, and the BWC footage clearly shows that

---

These allegations are clearly contradicted by the factual record, including the BWC footage (*see, e.g.*, D.I. 133 at A-260; *id.* at A-291 [Video 1 at 7:58]), and, therefore, to the extent Plaintiffs allege that these claims form a basis of Venus's excessive force claims, I will grant summary judgment on them in favor of Defendants.

[9] As noted previously, Plaintiffs claim that this search took even longer. But even if that is inaccurate, it is undisputed that at least 50% of the search went unrecorded and is unaccounted for by the BWC footage.

no such thing happened at the beginning. Whether it happened at some other (later and unrecorded) time, as she now asserts, simply means there is a credibility issue.

I thus find that there is thus a genuine dispute about a material fact and decline to grant summary judgment for Officer Simonetti on Venus's excessive force claims. From the record, it does not appear that Venus asserts an excessive force claim against Officer Cunningham, and therefore, insofar as Venus has asserted a particular excessive force claim against him, I will grant summary judgment in favor of Officer Cunningham.

### d. Verbal Threats (All Plaintiffs)

Plaintiffs allege that Defendants made various verbal threats against Plaintiffs, including a threat "to shoot Plaintiffs if they moved." (D.I., 57 at ¶ 26). I have reviewed the BWC footage, and there is no indication on this footage that Defendants or any of the officers made any such threats against Plaintiffs.[10] (D.I. 133 A-291-95). As I noted earlier, however, the BWCs did not record the entirety of the search and are not therefore dispositive of this issue.

That said, I do not think that Plaintiffs have a claim here as a matter of law. Plaintiffs state, "If an individual is compliant, unarmed, and poses no immediate threat, the threat of shooting or pointing a firearm at them is likely to be deemed excessive." (D.I. 136 at 11). The various cases Plaintiffs cite in their Answering Brief (D.I. 136 at 11, citing *Tennessee v. Garner*, 471 U.S. 1, 3-4 (1985); *Russell v. Richardson*, 905 F.3d 239, 244 (3d Cir. 2018); *Johnson v. City of Philadelphia*, 837 F.3d 343, 349 (3d Cir. 2016)) in support of this contention are unavailing, however, as these cases all analyze instances where officers exercised deadly force. Plaintiffs do

---

[10] The audio on the BWCs is clear. I think it conclusively shows that there were no threats during the recorded portions. I think Plaintiffs conceded at oral argument that it disproved their allegations of verbal threats in connection with the initial entry into the house and the seizing and securing of Plaintiffs.

11

not allege that the officers *exercised* deadly force, however; they only allege that the officers made verbal threats of deadly force. Voluminous case law suggests that verbal threats do not, by themselves, rise to the level of a constitutional violation actionable under § 1983.[11] *See, e.g., Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983); *Pittsley v. Warish*, 927 F.2d 3, 7-8 (1st Cir. 1991), *abrogated on other grounds by Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979).[12] As such, I will grant summary judgment in favor of Defendants on the excessive force claims to the extent they are predicated on the making of verbal threats.

## B. Deprivation of Plaintiffs' Fourth Amendment Rights

Plaintiffs' Fourth Amendment claim rests upon their assertion that Defendants violated their right to be free from unlawful seizures, because there was no probable cause to support the search warrant of Plaintiffs' house. (D.I. 57 at ¶ 43; D.I. 136 at 16). In particular, Plaintiff

---

[11] This position is also overwhelmingly supported by other district courts in this circuit. *Ludwig v. Terra*, 2025 WL 2325654 at *6 (E.D. Pa. Aug 12, 2025) ("Threats of bodily harm do not state a § 1983 claim because verbal threats or taunts, without more, are insufficient to violate the Constitution."); *Eleiwa v. Leggins*, 2025 WL 3079235 at *4 (D.N.J. Nov 4, 2025) (same); *McKenna v. Schauer*, 2009 WL 959869 at *4 (M.D. Pa. Apr. 6, 2009) ("It is well established that verbal harassment or threats will not state a constitutional claim."); *Richardson v. Rozum*, 2017 WL 2954715 at *4 (W.D. Pa. June 9, 2017) ("Further, as to Plaintiff's claims of verbal threats, it is well established that verbal threats alone do not state a constitutional claim.").

[12] These cases were either decided without reference to a specific constitutional provision or analyzed under the Eighth Amendment. That none of these cases mention the Fourth Amendment is not surprising; it is difficult to see how verbal threats could transform an otherwise reasonable search and seizure into an unreasonable one. Defendants acknowledge that some courts of appeals have held that a threat can raise an Eighth Amendment issue. (D.I. 131 at 19 n. 5). Plaintiffs do not claim any Eighth Amendment issue in their complaint, however, and even if they had, Defendants would be entitled to qualified immunity for the alleged verbal threats, given the existence of a number of cases holding that verbal threats alone do not constitute an Eighth Amendment (or general constitutional) violation. *See District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (noting that "officers are entitled to qualified immunity under § 1983" unless they violate a constitutional right established by a "settled law" that has been "dictated by controlling authority or a robust consensus of cases of persuasive authority") (cleaned up).

Cameron McCary claimed at deposition that the Defendants lied about various events in order to improperly obtain a search warrant. (D.I. 133 at A-13).

Defendants argue that the search warrant was supported by probable cause (D.I. 131 at 15). The record shows that Defendant Officer Cunningham, who was an affiant for the search warrant, described two controlled drug buys from Cameron and that Cameron was surveilled immediately before or after, once entering and once leaving the residence at which the search was conducted. (D.I. 151-1 at COUNTY000418-421). Under this set of facts, the search warrant of the residence was supported by probable cause. *United States v. Thornton*, 559 F. App'x 176, 179 (3d Cir. 2014).

Cameron's deposition testimony challenging the underlying validity of the search warrant is insufficient as a matter of law. "A section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer. . . must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)). Beyond his mere conclusory say-so, Cameron has offered not even a scintilla of evidence – nor does any exist in the factual record – suggesting that Defendants made false statements or omissions in applying for the otherwise valid search warrant.[13] "[W]here [a] search [is] conducted pursuant to a valid warrant, there is no Fourth Amendment violation." *Willard v. Pennsylvania Soc'y for the*

---

[13] Cameron's deposition testimony showed that he was generally unfamiliar with the contents of the search warrant affidavit. (D.I. 133 at A-13).

13

*Prevention of Cruelty to Animals*, 525 F. App'x 217, 220 (3d Cir. 2013). Accordingly, I will grant summary judgment in favor of Defendants on Plaintiffs' Fourth Amendment Claims.

      C.      **Plaintiff Venus McCary's State Law Claims (Assault and Battery and Intentional Infliction of Emotional Distress)**

The SAC also asserts state law claims by Plaintiff Venus McCary against Defendants for Assault and Battery and Intentional Infliction of Emotional Distress ("IIED").

Generally, the Delaware County and Municipal Tort Claims Act ("Tort Claims Act") grants tort immunity to government employees. 10 *Del. C.* § 4011(a). There is an exception to this immunity, however, for employees who committed "acts or omissions causing property damage, bodily injury, or death . . . for those acts which were not within the scope of employment or which were performed with wanton negligence or wilful and malicious intent." 10 *Del. C.* § 4011(c). Allegations of emotional or psychological injuries, without physical injury, is insufficient to establish the element of "bodily injury" under the Tort Claims Act. *Holmes v. D'Elia*, 2015 WL 1889030 at *2 (Del. Super. Ct. Apr. 20, 2015), *aff'd*, 129 A.3d 881 (Del. 2015) (an allegation that the plaintiff was "overwhelmed psychologically [and] depressed in the extreme about the nightmare [he] live[s]" did not constitute "bodily injury" under the Tort Claims Act).

As I previously noted, Venus does not assert that Officer Cunningham dragged her down the stairs or otherwise battered her in a way that may have resulted in "bodily injury." As such, I grant summary judgment in favor of Officer Cunningham on Venus's Assault and Battery claim and her IIED claim.

At deposition, Venus testified that Officer Simonetti threw her down, dragged her down the steps, and threw her into the car in such a manner that caused her to injure her toe. (D.I. 133 at A-104, A-156). In their briefing, Defendants do not dispute that Officer Simonetti's conduct

14

(if it were as Venus described it) would involve "wanton negligence" so as to defeat the immunity otherwise afforded to him by the Tort Claims Act. (D.I. 131 at 20; D.I. 137 at 10). Venus's injury to her toe plainly constitutes "bodily injury" under the Tort Claims Act. I find that Officer Simonetti therefore cannot claim immunity. I decline to grant summary judgment in favor of Officer Simonetti on Venus's Assault and Battery claim.

A claim for IIED "requires proof that [defendant] intentionally engaged in extreme or outrageous conduct that caused severe emotional distress." *Hydrogen Master Rts., Ltd. v. Weston*, 228 F.Supp.3d 320, 340 (D. Del. Jan. 9, 2017) (citing *Hunt ex rel. DeSombre v. State*, 69 A.3d 360, 367 (Del. 2013) (cleaned up). "Outrageous behavior is conduct that exceeds the bounds of decency and is regarded as intolerable in a civilized community." *Hydrogen Master Rts.*, 228 F.Supp.3d at 340 (citing *Hunt ex rel. DeSombre*, 69 A.3d at 367). Defendants do not raise an argument in their briefing that Officer Simonetti's conduct toward Venus did not or should not be considered to constitute extreme or outrageous conduct. I find that a reasonable juror could find that Officer Simonetti's alleged actions constitute extreme or outrageous conduct. I therefore decline to grant summary judgment in favor of Officer Simonetti on Venus's IIED claim.

IV. **CONCLUSION**

An appropriate order will issue.